UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER LEE HALL,

          Plaintiff

v.

KEVIN M. CHAPMAN,
NICHOLAS JUKURI,
FRANK O. FINCH,
DANIEL SWETZ, and
JOHN POLKINGHORN,

          Defendants.

_____/

Case No. 4:17-cv-10895
District Judge Terrence G. Berg
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO DISMISS PLAINTIFF'S CLAIMS AGAINST DEFENDANT FINCH and GRANT DEFENDANTS CHAPMAN, JUKURI, SWETZ, AND POLKINGHORN'S MOTION TO DISMISS (ECF No. 34)

I.    **RECOMMENDATION**:  The Court should:  **(1) DISMISS** Plaintiff's claims against Defendant Finch without prejudice for failure to comply with Fed. R. Civ. P. 4(m) (or, alternatively, with prejudice under 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)); and, **(2) GRANT** Defendants Chapman, Jukuri, Swetz, and Polkinghorn's September 7, 2021 motion to dismiss (ECF No. 34).

## II.    REPORT:

### A.    Prior Cases

In 2015, while incarcerated at FCI Milan, Walter Lee Hall filed two cases in this Court.  *See Hall v. Federal Bureau of Prisons*, Case No. 2:15-cv-12376-AJT-SDD (E.D. Mich.) (judgment Aug. 29, 2016), *Hall v. Chapman*, *et al*., Case No. 4:15-cv-13771-TGB-APP (E.D. Mich.) (judgment Jan. 20, 2018).  In the latter, he sued three individuals who are also parties to the instant case:  (1) Kevin M. Chapman, identified as the FCI Milan UNICOR Paint A Department Supervisor; (2) Nicholas Jukuri, identified as a sheet metal worker foreman; and, (3) Frank O. Finch, identified as General Manager UNICOR.  *Hall v. Chapman, et al.*, Case No. 4:15-cv-13771-TGB-APP (E.D. Mich.) (ECF No. 1, PageID.1-2, therein).

Defendants were represented by the U.S. Attorney's Office.  On January 17, 2017, Hall – "in direct response" to the Court's December 21, 2016 opinion and order (*see* ECF No. 33, therein) – filed an amended complaint against Chapman "based on events that transpired on or about September and October 2014."  (ECF No. 38, therein.)  As Judge Berg recognized on February 17, 2017, the superseding amended complaint "appears to have tried to address the problems with the original Complaint raised by Magistrate Judge Patti."  (ECF No. 42, PageID.408-409, therein.)  The matter concluded in January 2018, when the Court

granted Defendants' motion to dismiss, dismissed Hall's claims without prejudice, and entered judgment.  (ECF Nos. 52, 53, therein.)

### B.    Instant Complaint

On March 21, 2017, Hall filed the instant matter, which concerns his incarceration at FCI Milan "from July 2014 to November 2016."  (ECF No. 1, PageID.1.)  Defendants are:  (1) Chapman; (2) Jukuri; (3) Finch; (4) Daniel M. Swetz, a Correctional Counselor; and, (5) John T. Polkinghorn, who is described as a Unit Case Manager.  (ECF No. 1, PageID.2, 76.)

At the time Hall filed this lawsuit in March 2017, he was incarcerated at FCI El Reno in Oklahoma.  (*Id*., PageID.79.)  On February 27, 2020, Judge Berg referred this case to me for pretrial matters.  (ECF No. 11.)  Plaintiff was released from the Federal Bureau of Prisons' custody on August 12, 2020.[1]  In December 2020, he informed the Court of his new address.  (ECF No. 20.)

### C.    Defendant Finch has yet to appear, and the claims against him should be dismissed without prejudice.

Plaintiff is proceeding *in forma pauperis* (IFP).  (ECF Nos. 2, 3.)  Therefore, the Court directed the U.S. Marshal Service (USMS) "to serve the appropriate papers in this case on defendant(s) without prepayment of the costs for

---

[1] *See* https://www.bop.gov/inmateloc/ (08528-030) (last visited Aug. 5, 2022).

such service." (ECF No. 7; *see also* ECF No. 13.)[2]  The USMS made multiple

attempts at service, some of which were successful, some of which were not.

(ECF Nos. 8-9, 14, 16, 17-19, 21-24, 27.)

On May 26, 2021, Chapman, Jukuri, Swetz, and Polkinghorn appeared via

counsel.  (ECF No. 28.)  To date, Finch has not appeared.  It seems the USMS's

January 2021 attempt to serve Finch was unsuccessful.  (ECF No. 26.)  On May

26, 2021, the Government informed the Court that "Finch is retired[,] and the

Bureau of Prisons (BOP) provided his last known address to the United States

Marshals Service."  (ECF No. 29, PageID.155 ¶ 7.)

Approximately five months later, on November 1, 2021, I entered an order,

which provided, in part:  "[U]nless the United States Attorney's Office informs

this Court, in writing, that it agrees to accept service on behalf of Defendant Finch

or enters an appearance on Defendant Finch's behalf, the Federal Bureau of

Prisons must furnish the [USMS] with Defendant Finch's last-known address."

(ECF No. 39, PageID.207.)

It is not clear what became of the apparent February 2022 attempt to effect

service upon Finch.  (ECF No. 43.)  On April 15, 2022, the Clerk of the Court

issued a summons as to Finch.  (ECF No. 44.)  This attempt was also unfruitful.

---

[2] The copy of this order sent to Plaintiff at FPC Duluth was returned as
undeliverable.  (ECF No. 15.)

(ECF Nos. 45, 46, 51.)  Then, on June 8, 2022, the USMS filed a notice of reasonable effort search, explaining as follows:  "An alternate address could not be located due to multiple search results being returned for the defendant's name and state indicated in the address provided by the Michigan Department of Corrections.  The [USMS] will make no additional efforts to perform service." (ECF No. 47.)  Therefore, on June 9, 2022, I entered an order requiring Plaintiff to show cause – in writing, and no later than Friday, July 8, 2022 – why Defendant Finch should not be dismissed for the failure to serve him in accordance with Fed. R. Civ. P. 4(m).  (ECF No. 49.)  To date, Plaintiff has not filed a related response.

"If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).  Considering that this case has been pending for more than five years, that the USMS's multiple attempts to effect service upon Finch have been unsuccessful (*see*, *e.g.*, ECF Nos. 9, 26, 46), and that Plaintiff has not responded to the Court's related show cause order, the Court should dismiss Plaintiff's claims against Defendant Finch without prejudice for failure to comply with Fed. R. Civ. P. 4(m).  Alternatively, pursuant to this Court's screening functions in IFP

and prisoner cases (*see* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)), and in the interest

of judicial economy, the claims against Finch should be dismissed *with prejudice*,

because the Bivens claims that form the basis of Plaintiff's complaint are not

cognizable in this context under recent Supreme Court jurisprudence, as explained

in great detail below (*see* Section II.E.3).

### D.    Defendants Chapman, Jukuri, Swetz, and Polkinghorn's Motion to Dismiss

Currently before the Court is Defendants Chapman, Jukuri, Swetz, and

Polkinghorn's September 7, 2021 motion to dismiss, which argues that:

1.    This Court should dismiss Hall's official capacity claims for lack of subject matter jurisdiction.

2.    The Court should dismiss Plaintiff's individual capacity First and Fifth Amendment claims based on a lack of subject matter jurisdiction where no remedy lies under *Bivens [v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)].

3.    Defendants are entitled to qualified immunity as to Plaintiff's First and Fifth Amendment claims.

(ECF No. 34, PageID.171-172, 181-199.)

Although Plaintiff's response was originally due on October 8, 2021, he

sought an extension, and Plaintiff was given until December 10, 2021 by which to

file a response.  (ECF Nos. 35, 38, 40.)  Thus, Plaintiff's response, which was

dated December 13, 2021 and post-marked January 4, 2022 (ECF No. 41) is tardy,

although I have considered it in this report and recommendation.  Importantly,

Plaintiff "concedes that this Court should in fact dismiss Plaintiff's official capacity claims." (ECF No. 41, PageID.211, 216-218.) Therefore, only Defendants' *Bivens* and qualified immunity arguments remain at issue.

Defendants timely replied on January 18, 2022. (ECF No. 42.)

### E.    Discussion

#### 1.    Factual background

UNICOR is "the trade name for Federal Prison Industries (FPI), a wholly owned Government corporation . . ." with a goal to "prepar[e] inmates for successful reentry through job training."[3] Hall claims he was working in UNICOR's Paint Department at FCI Milan when Chapman took over the department in June or July of 2014. (ECF No. 1, PageID.5.) Hall alleges Chapman started to form "dislike and ill feelings" toward him after Hall corrected "Chapman's [unspecified] miss-statements [sic][,]" which Hall believes "lead to C/O Chapman deciding to make his life . . . at FCI-Milan a living hell." (*Id*.)

Hall alleges he "worked his way up through UNICOR and secured a job as an Inventory Clerk," but Chapman "told Mr. Hall that he doesn't think he should have that job." (*Id*.) Plaintiff also alleges:

- In September 2014, he was the only one from whom Chapman took money for exceeding the lunch break. (*Id*., PageID.6; *see*

---

[3] *See* https://www.bop.gov/inmates/custody_and_care/unicor_about.jsp (last visited Aug. 5, 2022).

*also id*., PageID.49, 51, 53 [Administrative Remedy Case No. 808450].)[4]

- In October 2014, on more than one occasion, Chapman removed Hall from the overtime list.  According to Plaintiff, he "is the only one that works in the department that [Chapman] took off the list."  Also, Chapman gave Plaintiff until October 23, 2014 "to find some place to go[,]" as Chapman did not think Plaintiff should have "the count job," presumably the "inventory clerk" position, because it gave "too much lee way [sic]."  Additionally, when Plaintiff worked overtime in the paint booth, Chapman "took Mr. Hall off that job and gave it to somebody else."  Later, on October 16, 2014, Chapman informed Hall, "I'm thinking of putting you on the take off line[,]" which Hall claims would lower his grade. In Hall's words, he "went from grade 1 to 2, a demotion which resulted in roughly loss of pay of $175.00 monthly."  (ECF No. 1, PageID.6-8; *see also id*., PageID.49, 51, 52, 54 [808450]).

- On November 25, 2014 and again on November 30, 2014, Plaintiff spoke with Finch, the general manager, about Chapman, to no avail.  (*Id*., PageID.7-8, 39 ¶ 10 [Pl.'s Unsigned Declaration].)

- In May 2015, Finch and Jukuri "reassigned 2 white inmates," with "no loss of grade and full time[,]" while Plaintiff was "demoted by one grade and put on part-t[i]me status at Unicor."  (*Id*., PageID.8.)

- On September 8, 2015, Plaintiff was tardy to work.  Although this was his "first time ever being late[,]" Jukuri wrote an incident report for "unexcused absence from work or assignment," as opposed to issuing a warning, and the Unit Discipline Committee (UDC)'s action – signed by Swetz and perhaps also Polkinghorn – was "loss of preferred housing"

---

[4] The BOP's Administrative Remedy (AR) Program involves attempts at informal resolution, an AR Request (Forms BP-9 / BP-229), a Regional AR Appeal (Forms BP-10 / BP-230), and a Central Office AR Appeal (Forms BP-11 / BP-231).  (*See* https://www.bop.gov/PublicInfo/execute/policysearch?todo=query#.)

and "loss of job."  By comparison, inmate Sutcliffe – a white
male – was late for work on the same day but was not issued a
misconduct report.  (*Id.*, PageID.7, 34-35 [Incident Report],
76-77 [Sept. 9, 2015 Attempt at Informal Resolution], 55-60
[AR Case No. 839039], 63-66 [AR Case No. 839043], 68-75
[AR Case No. 842104].)

(ECF No. 1, PageID.6-8; *see also id.*, PageID.15.)  Significantly, Plaintiff seeks

only monetary relief in this lawsuit, *i.e.*, compensatory, nominal and punitive

damages.  (ECF No. 1, PageID.27.)

## 2.    Interpreting Plaintiff's original pleading

### a.    Form

Plaintiff's initial filing takes an unconventional form.  Preliminarily, it does

not state its claims in numbered paragraphs, as required by Fed. R. Civ. P. 10(b).

Nor are the pages numbered consecutively, as required by Local Rule 5.1.  *See*

E.D. Mich. LR 5.1(a)(2).

However, there is a more perplexing issue with the March 2017 pleading's

form – the layout of its content.  After explaining in a "background" section that

he filed the instant lawsuit in response to my December 2016 report and

recommendation in his prior case (ECF No. 1, PageID.1), the pleading next lists

his twelve counts against the various Defendants (ECF No. 1, PageID.2-4), which

is *followed* by his statement of facts (*id.*, PageID.5-8).  Even setting aside this

unconventional form and order, the pleading then turns to a section labeled,

"complaint," (*see id.*, PageID.9-26), which contains several irregularities for an

initial pleading, *e.g.*:  (a) multiple references to his prior case (*id.*, PageID.10, 11,

19); (b) multiple references to a proposed first amended complaint (*id.*, PageID.9-

12, 14, 18-21);[5] (c) a single reference to a "past filing," (*id.*, PageID.13); (d) a

single reference to "non-party D. Swetz," who Plaintiff has clearly named as a

Defendant in the caption (*compare id.*, PageID.1; *with id.*, PageID.15); (e)

multiple references to the BOP's AR Policy on initial filing (28 C.F.R. § 542.14)

and appeals (28 C.F.R. § 542.15) (*id.*, PageID.17), when failure to exhaust is a

defense; and, (f) several references to qualified immunity, entitlement to which is

also a defense (*id.*, PageID.18, 21-23).  As it turns out, significant portions of

these pages are borrowed from my December 2016 report and recommendation in

Plaintiff's prior case.  (*Compare*, *e.g.*, ECF No. 1, PageID.11-13, 15-18, 25-26;

*with* Case 4:15-cv-13771-TGB-APP (ECF No. 30, PageID.290-295, 301-308).)

Thus, in considerable part, the 18-page "complaint" portion of this original

pleading (ECF No. 1, PageID.9-26) seems repurposed from his prior lawsuit or

perhaps even, in some form, a response thereto.

---

[5] And, the pleading specifically refers to a "May 10, 2016 proposed first amended
complaint . . . [,]" (*id.*, PageID.19), which is almost certainly a reference to the
attachments to his same-day motion for leave to file an amended complaint in
Case 4:15-cv-13771-TGB-APP (ECF No. 20, PageID.204-206 [Motion], 207-216
[Proposed Amended Complaint]), which motion was granted in part and denied in
part on December 21, 2016 (ECF No. 33, therein).

### b.    Breadth

Looking past the pleading's formatting anomalies, there is some question about the breadth of Plaintiff's allegations.  While he states his complaint concerns his incarceration at FCI Milan from July 2014 to November 2016 (*id.*, PageID.1), his "statement of facts" seems to fine-tune the period at issue to June or July 2014 to September 2015 (*id.*, PageID.5-8), as do the various delineated claims within the section he labels "complaint" (*id.*, PageID.9-26).  Yet, notwithstanding the pleading's caption and counts naming up to five Defendants – *i.e.*, Chapman, Jukuri, Finch, Swetz, and Polkinghorn – or the pleading's apparent June or July 2014 to September 2015 time span, the "conclusion" of Plaintiff's initial pleading only mentions:  (a) his First Amendment retaliation claim against Chapman "concerning the events of September and October 2014;" (b) his First Amendment retaliation claim against Finch concerning the events of November 2014; and, (c) his Fifth Amendment equal protection claim against Chapman "concerning the September 2014 pay cut and the October 2014 overtime events . . . ."  (ECF No. 1, PageID.27.)  (*See also id.*, PageID.2-4, 8-10, 12-19, 21-23, 25-26.)  In other words, the conclusion of Plaintiff's pleading suggests there are only two Defendants – *Chapman and Finch* – and also suggests the time period at issue

is only September 2014 to November 2014.  This report and recommendation

follows this narrowed construction of Plaintiff's claims.[6]

>   **3.**    **Plaintiff's First Amendment retaliation and Fifth**
>            **Amendment equal protection claims, Defendants'** *Bivens*
>            **argument, and intervening authority**

Moving from these observations regarding the form and breadth of

Plaintiff's pleading to Defendants' alleged bases for dismissal, Defendants argue

that this Court should not extend *Bivens* – the Supreme Court's 1971 holding that

"violation of [the Fourth Amendment] by a federal agent acting under color of his

authority gives rise to a cause of action for damages consequent upon his

unconstitutional conduct[,]" *Bivens*, 403 U.S. at 389 – "into the new contexts

sought by Plaintiff."  (ECF No. 34, PageID.182-190.)  As Defendants note, the

Supreme Court has articulated "[t]he proper test for determining whether a case

presents a new *Bivens* context . . . ."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859

(2017).  (ECF No. 34, PageID.183-184.)  "If the case is different in a meaningful

way from previous *Bivens* cases decided by this Court, then the context is new."

*Ziglar*, 137 S. Ct. at 1859.

---

[6] To the extent Plaintiff alleges his complaint is based on 42 U.S.C. § 1983 ("Civil action for deprivation of rights") (*see* ECF No. 1, PageID.1, 13, 14, 20, 22), he is mistaken, because he is not suing state or local officials.  The same is true of Plaintiff's references to the Fourteenth Amendment (*id*., PageID.2, 18), which applies to the states.  Each of the Defendants in this case are or were federal officials.  (*Id*., PageID.1-2.)

####        a.        Intervening authority

In its initial briefing, Defendants argue the Court "should not extend *Bivens*" to "redress First Amendment retaliation claims[,]" or to "the new Fifth Amendment context raised by Plaintiff."  (ECF No. 34, PageID.172, 182, 185-190.)  The month after Defendants filed their motion, the Sixth Circuit summarized the "*Bivens* trilogy" as follows:

> The Supreme Court has recognized an implied cause of action to recover damages from federal officers who violate constitutional rights in only three narrow circumstances.  *See Bivens*, 403 U.S. 388 . . . (Fourth Amendment search-and-seizure violation by federal narcotics agents); *Davis v. Passman*, 442 U.S. 228 . . . (1979) (Fifth Amendment employment-discrimination violation by a United States congressman); *Carlson v. Green*, 446 U.S. 14 . . . (1980) (Eighth Amendment inadequate-medical-care violation by prison officials).

*Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 882–83 (6th Cir. Nov. 19, 2021), *reh'g denied*, No. 20-1339, 2022 WL 326693 (6th Cir. Jan. 25, 2022).  In fact, the Supreme Court has previously recognized that *Bivens*, *Davis*, and *Carlson* "represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."  *Ziglar*, 137 S. Ct. at 1855.

In January 2022, Plaintiff responded to Defendants' *Bivens* argument (ECF No. 41, PageID.211-213), and Defendants filed their reply (ECF No. 42).  However, approximately six months after briefing concluded, the Supreme Court further opined on *Bivens*'s scope.  In addition to observing that "our cases have

made clear that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts," the Supreme Court:  (i) declined to extend *Bivens* to a Fourth Amendment excessive-force claim in the border-security context; and, (ii) held "*there is no Bivens action for First Amendment retaliation*."  *Egbert v. Boule*, 142 S. Ct. 1793, 1800, 1804, 1807 (June 8, 2022) (emphasis added).

Defendants immediately filed a notice of intervening authority, contending that *Egbert* "is dispositive of the issues in this case."  (ECF No. 48.)  Accordingly, on June 11, 2022, I entered an order requiring Plaintiff to show cause – no later than Wednesday, July 13, 2022, and in writing - why his March 2017 complaint (ECF No. 1) should not be dismissed in light of *Egbert*.  (ECF No. 50, PageID.291.)  To date, Plaintiff has not filed a related response.

### b.    First Amendment retaliation

In response to Defendants' argument that this Court "should not extend *Bivens* to redress First Amendment retaliation claims[,]" (ECF No. 34, PageID.185-188), Plaintiff relies upon three cases:  (i) *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (§ 1983 action brought by *state prisoner* Plaintiffs); (ii) *Crawford-El v. Britton*, 523 U.S. 574 (1998) (a § 1983 lawsuit); and, (iii) *Vance v. Barrett*, 345 F.3d 1083, 1093-94 (9th Cir. 2003) (a § 1983 lawsuit).  (ECF No. 41, PageID.211-212.)  However, these are non-*Bivens* lawsuits, and each of them

precedes the Supreme Court's 2017 decision in *Ziglar*.  (ECF No. 42,
PageID.220.)

More to the point, just two months ago, the Supreme Court stated
unequivocally that, "we hold that there is no *Bivens* action for First Amendment
retaliation."  *Egbert*, 142 S. Ct. at 1807.  And, if there were any doubt about the
breadth of this broad pronouncement, and whether it is limited to the facts of that
specific case, Justice Sotomayor's partial concurrence (joined by Justices Breyer
and Kagan) − given immediately after dissenting from the Court's refusal to
recognize the plaintiff's Fourth Amendment excessive force *Bivens* claim −
concurs "in the Court's judgment that Boule's First Amendment retaliation claim
may not proceed under *Bivens*," explaining that she agrees with the resulting
dismissal of the First Amendment *Bivens* action "not for the reasons the Court
identifies . . . but *because precedent requires it*."  *Id*. at 1811,1818 (Sotomayor, J.
concurring) (emphasis added).[7]  These statements are straightforward, and, if
Plaintiff intended to argue that *Egbert* somehow applied only to the border-
security context involved in *Egbert* − a proposition with which the Undersigned
disagrees − then Plaintiff waived any such argument by failing to respond to the

---

[7] Moreover, Justice Thomas's majority opinion labeled respondent's "First
Amendment retaliation claim" as a "new *Bivens* context[,]" which "arises when
there is a new 'constitutional right at issue[.]'" *Egbert*, 142 S.Ct. at 1807 (quoting
*Ziglar*, 137 S.Ct., at 1860).

Court's show cause order.  Accordingly, the Court should dismiss Plaintiff's First

Amendment retaliation claims in this *Bivens* action.

### c.    Fifth Amendment equal protection

As explained in *Egbert*, "[t]o inform a court's analysis of a proposed *Bivens*

claim, our cases have framed the inquiry as proceeding in two steps:

> First, we ask whether the case presents "a new *Bivens* context"—*i.e.*,
> is it "meaningful[ly]" different from the three cases in which the
> Court has implied a damages action. *Ziglar*, 582 U. S., at ——, 137
> S.Ct., at 1859-1860. Second, if a claim arises in a new context,
> a *Bivens* remedy is unavailable if there are "special factors" indicating
> that the Judiciary is at least arguably less equipped than Congress to
> "weigh the costs and benefits of allowing a damages action to
> proceed." *Ziglar*, 582 U. S., at ——, 137 S.Ct., at 1858 (internal
> quotation marks omitted). If there is even a single "reason to pause
> before applying *Bivens* in a new context," a court may not recognize
> a *Bivens* remedy. *Hernández*, 589 U. S., at ——, 140 S.Ct., at 743.

*Egbert*, 142 S. Ct. at 1803.  "While our cases describe two steps, those steps often

resolve to a single question: whether there is any reason to think that Congress

might be better equipped to create a damages remedy."  *Id*., 142 S. Ct. at 1803.

"Finally, . . . a court may not fashion a *Bivens* remedy if Congress already has

provided, or has authorized the Executive to provide, 'an alternative remedial

structure.'"  *Id.*, 142 S. Ct. at 1804 (quoting *Ziglar*, 582 U. S., at ——, 137 S.Ct.,

at 1858).

Defendants argue that the Court "should not extend *Bivens* to the new Fifth

Amendment context raised by Plaintiff."  (ECF No. 34, PageID.188-190.)  They

acknowledge the Fifth Amendment equal protection gender discrimination remedy recognized in *Davis*, but they contend Hall's Fifth Amendment equal protection claim "is a new context."  (ECF No. 34, PageID.188.)  "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."  *Hernandez v. Mesa*, 140 S. Ct. 735, 743, 206 L. Ed. 2d 29 (2020).  "[E]ven a modest extension is still an extension." *Ziglar*, 137 S. Ct. at 1864.

>   **i.    Plaintiff's Fifth Amendment equal protection race-based discrimination claim arguably presents a new *Bivens* context.**

Plaintiff's Fifth Amendment equal protection claim seems to be based on race, disparate treatment, and discrimination as it relates to his September 2014 pay cut and the October 2014 overtime events, if not also his May 2015 loss of grade and placement on part-time status, as well as the September 2015 loss of preferred housing and loss of job.  (ECF No. 1, PageID.2-4, 8-9, 11-12, 15-20, 22, 25.)  With the exception of his loss of preferred housing, his other losses are directly related to his employment at UNICOR, which is perhaps the reason Plaintiff cites Title VII of the Civil Rights Act and *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000) (state prisoner alleged defendants "worked to remove him from his prison job because of his race and because he filed a grievance . . .

.").[8]  (ECF No. 41, PageID.215.).  Yet, Hall's similarity to *Davis* seems limited to

alleged discrimination in governmental employment.  Plaintiff's alleged basis of

discrimination is race, including various comparisons with white prisoners (*see*

*id*., PageID.4, 7, 8, 15, 19), while *Davis* involved gender discrimination.  Also,

Plaintiff could seek recourse through the BOP's AR Program; for Davis, there

were "available no other alternative forms of judicial relief."  *Davis*, 442 U.S. at

245.  *See also, Egbert*, 142 S.Ct. at 1807 ("So long as Congress or the Executive

has created a remedial process that it finds sufficient to secure an adequate level of

deterrence, the courts cannot second-guess that calibration by superimposing a

*Bivens* remedy.")  In Defendants' words, "[t]here are material differences between

the context of this case and *Davis*[.]"  (ECF No. 34, PageID.189.)  *See also Zelaya*

*v. Hammer*, 516 F. Supp. 3d 778, 798 (E.D. Tenn. 2021) ("the Court cannot

extend a *Bivens* remedy" to "a race-based equal-protection claim under the Fifth

Amendment."); *Doe v. Meron*, 929 F.3d 153, 169 (4th Cir. 2019) (finding Doe's

"multiple alleged Fifth Amendment Due Process Clause violations, including

violations of his right to parentage, to familial relations and to equal protection of

the laws[,]" and the "meaningful differences between the rank of the officers

involved and the legal mandate under which the officers were operating"

presented a "new Bivens context."); *Harris v. FBOP*, No. 19-3585, 2020 WL

---

[8] *DeWalt* was abrogated by *Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020).

7586968, at *2 (6th Cir. Sept. 22, 2020) ("Harris's claim . . . differs 'in a meaningful way' because he claimed that his rights to equal protection and due process had been violated by the defendants' failure to facilitate his attempts to exercise his right to marry and satisfy Ohio's requirements to obtain a marriage license, a right and context that was not at issue in *Davis*.").  Neither party cited a published Sixth Circuit case on the new context issue (*see* ECF No. 34, PageID.188-190; ECF No. 41, PageID.212-213; ECF No. 42, PageID.220), and the Court did not find any on its own.  However, albeit in an unpublished opinion, I am persuaded by the Third Circuit's holding and reasoning in *Alexander v. Ortiz*, 807 F. App'x 198 (3rd Cir. 2020), a case also relying on *Ziglar* and affirming dismissal of a Fifth Amendment *Bivens* action "for allegedly denying [like Hall, a former federal prisoner plaintiff] pay increases, overtime opportunities, and promotions on account of race."  *Alexander*, 807 F. App'x at 199.  There, the Court found that *Davis* did not supply Alexander with a legal basis for a *Bivens* action, reasoning that "a UNICOR workplace and a congressional office are 'vastly different,' operating under separate sets of legal mandates[,]" and concluded that Alexander's Fifth Amendment racial discrimination claim "arises in a new context."  *Id*. at 200.  Taking all this into account, to the extent the instant case requests relief based on race discrimination in violation of the Equal Protection Clause of the Fifth Amendment, in the context of a prison employment

setting, I will assume for purposes of this motion that it presents a new *Bivens* context.

### ii.    Scrutiny of special factors disfavors extension

Defendants also contend that "[s]pecial factors counsel against extending *Bivens* into this new context."  (ECF No. 34, PageID.190; *see also* ECF No. 42, PageID.221-222.)  I agree.  Such factors "include whether existing legislation covers the area and whether alternative processes exist for protecting the right." *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020) (citing *Ziglar*, 137 S. Ct. at 1858, 1862).  The alleged events underlying this lawsuit took place at FCI Milan, where Plaintiff was incarcerated.  The absence of a "standalone damages remedy" in the PLRA "suggests a considered decision not to extend a damages remedy to First Amendment violations."  *Callahan*, 965 F.3d at 524 (citing *Ziglar*, 137 S. Ct. at 1865).  Also, "[t]he federal prisons' grievance process provides an alternative path for [the prisoner] to air his claims." *Callahan*, 965 F.3d at 524 (citing 28 C.F.R. § 542.10 *et seq*.).  *See also Harris*, 2020 WL 7586968, at *2.  Moreover, "[p]rison-based claims also present a risk of interference with prison administration."  *Callahan*, 965 F.3d 520, 524 (6th Cir. 2020).

In response, Plaintiff relies upon multiple cases, only three of which are binding upon this Court, the others all being from other circuits or lower courts:

(i) *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (the

Equal Protection Clause of the *Fourteenth Amendment* "is essentially a direction

that all persons similarly situated should be treated alike.") (citation omitted); (ii)

*Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975) ("This Court's approach

to Fifth Amendment equal protection claims has always been precisely the same

as to equal protection claims under the Fourteenth Amendment."); and, (iii) *Corr.*

*Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) ("In *Bivens* . . . we recognized for

the first time an implied private action for damages against federal officers alleged

to have violated a citizen's constitutional rights.").  (ECF No. 41, PageID.212-

213.)

However, as Defendants point out, each of these cases precedes the

Supreme Court's 2017 decision in *Ziglar*, and the Sixth Circuit's more recent,

November 19, 2021 decision in *Elhady* reinforced the "narrow circumstances" of

the "*Bivens* trilogy."  *Elhady*, 18 F.4th at 882-883.  (ECF No. 42, PageID.220-

221.)  And Defendants note a further distinction: The Defendant in *Davis* was a

U.S. congressman, whereas Defendants are "lower-level prison staff[.]"  (ECF No.

42, PageID.221.)  Likewise, in *Egbert*, the Supreme Court recognized the

uniqueness of the context faced by the *Davis* court.  *Egbert*, 142 S.Ct. at 1808

("[In *Davis*], the Court permitted a congressional staffer to sue a congressman for

sex discrimination under the Fifth Amendment.")

As the Sixth Circuit recently observed: "the Supreme Court devised a two-part inquiry to determine when we should engage in the 'disfavored judicial activity' of recognizing a new *Bivens* action. . . . And under this exacting test, the answer will almost always be never." *Elhady*, 18 F.4th at 883 (internal citation omitted). So it should be with Plaintiff's Fifth Amendment equal protection race-based discrimination claim, particularly where, as noted above, the Court of Appeals has previously recognized that "[p]rison-based claims also present a risk of interference with prison administration." *Callahan*, 965 F.3d at 524. And the Supreme Court's reasoning reminds us why this is so: "the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts." *Egbert*, 142 S.Ct. at 1807. Its stated concern that, "[a]t bottom, creating a cause of action is a legislative endeavor[,]" *id*., at 1802, does not bode well for recognizing or extending new *Bivens* claims here. Indeed, the Court has "emphasized[,]" and now re-emphasized, "that recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" *Id*., at 1803 (quoting *Ziglar*, 137 S.Ct., at 1856-1857). In the Court's own words, "[u]nsurprisingly, Congress is 'far more competent than the Judiciary' to weigh such policy considerations. . . . And the Judiciary's authority to do so at all is, at best, uncertain." *Egbert*, 142 S.Ct. at 1803 (quoting *Schweiker v. Chilicky*, 487

U.S. 412, 423 (1988) and citing *Hernandez*, 140 S.Ct. at 724).[9]  As the Third

Circuit stated in *Alexander*:

> Congress envisioned that UNICOR would be managed within the executive
> branch by a board appointed by the President, *see* 18 U.S.C. § 4121, and did
> not suggest any role for the federal courts.   . . . We agree this remedial
> scheme for physical injuries is a strong signal that Congress did not intend
> to create a judicially enforceable remedy for constitutional violations and
> that any decision to do so must be left to Congress.

*Id.*, 807 F. App'x at 200.  Likewise here, consideration of the "special factors"

makes it apparent that "Congress might be better equipped to create a damages

remedy" in this context.  *Egbert*, 142 S.Ct. at 1803.  That being so, the Court

should not extend *Bivens* to redress Plaintiff's Fifth Amendment equal protection

race-based discrimination claim, and it should be dismissed.

---

[9] In his concurrence in *Egbert*, Justice Gorsuch pointedly observes:

> And if the only question is whether a court is "better equipped" than
> Congress to weigh the value of a new cause of action, surely the right
> answer will always be no.  Doubtless, these are the lessons the Court seeks
> to convey.  I would only take the next step and acknowledge explicitly what
> the Court leaves barely implicit.  Sometimes, it seems, "this Court leaves a
> door ajar and holds out the possibility that someone, someday might walk
> through it" even as it devises a rule that ensures "no one ... ever will."
> *Edwards v. Vannoy*, . . . 141 S.Ct. 1547, 1566, 209 L.Ed.2d 651 (2021)
> (GORSUCH, J., concurring).  In fairness to future litigants and our lower
> court colleagues, we should not hold out that kind of false hope, and in the
> process invite still more "protracted litigation destined to yield nothing."
> *Nestlé [USA, Inc. v. Doe]*, . . . 141 S.Ct.[ 1931,] 1943 [(2021)]
> (GORSUCH, J. concurring).

*Egbert*, 142 S. Ct. at 1810 (Gorsuch, J. concurring).

### 4.    Plaintiff's conspiracy claims

Plaintiff mentions conspiracy throughout his pleading, including "conspiracy and the events of September 2015," in support of which he points to the August 2, 2016 declaration of Benjamin P. Foreman (ECF No. 1, PageID.41-42), although he does not mention 42 U.S.C. § 1985 ("Conspiracy to interfere with civil rights"). (*Id.*, PageID.2-4, 9, 13, 20-25.) As Plaintiff correctly notes:

> A civil conspiracy claim under § 1983 or *Bivens* lies where there is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum,* 489 F.3d 273, 290 (6th Cir.2007). To prevail on such a claim in this context, appellants must demonstrate "that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed" in furtherance of the conspiracy that caused the injury. *Id.*

*Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). (ECF No. 1, PageID.20.) "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient . . . ." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Defendants challenge Plaintiff's claim(s) of conspiracy at least in part for their alleged lack of specificity. (ECF No. 34, PageID.195-198.) However, if the Court agrees with the above recommendation that Plaintiff's First Amendment retaliation and Fifth Amendment equal protection race-based discrimination claims are not recognized by *Bivens*, then the Court need not resolve the exact

basis of Plaintiff's conspiracy claim or whether he has pleaded such claim with requisite specificity.  "In the absence of a viable underlying constitutional claim, the district court [does] not err by dismissing [Plaintiff]'s claim of a conspiracy to violate his constitutional rights." *Montgomery v. Ferentino*, No. 20-3114, 2021 WL 3204843, at *3 (6th Cir. Feb. 24, 2021) (a mixed 42 U.S.C. § 1983 and *Bivens* case against multiple federal, state, and private prison officials and employees"). *See also Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009) (where Plaintiff brought her federal claims pursuant to 42 U.S.C. § 1983, she could not "succeed on a conspiracy claim because there was no underlying constitutional violation that injured her.").

### 5.    Qualified immunity

Defendants argue that Defendants are entitled to qualified immunity.  (ECF No. 34, PageID.191-199.)  The related two-step analysis requires the Court to consider "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right[,]" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted).  "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson*, 555 U.S. at 232 (citation omitted).

Plaintiff relies upon a number of cases to make his argument, including: (i) *Crawford-El*, 523 U.S. at 589 n.10, 592 (in a § 1983 lawsuit, "[t]he reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right[,]" and recognizing that "the First Amendment bars retaliation for protected speech" is a "general rule" that "has long been clearly established . . . ."); (b) *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (§ 1983 action brought by state inmate Plaintiffs); and, (iii) *Weinberger*, 420 U.S. at 638 n.2. (ECF No. 41, PageID.213-216.) Still, if the Court agrees that Plaintiff's First Amendment retaliation and Fifth Amendment equal protection race-based discrimination claims are not recognized by *Bivens*, and in turn that Plaintiff cannot sustain his conspiracy claim, then the Court need not address whether Defendants are entitled to qualified immunity on such claims. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")

**F.    Conclusion**

For the reasons stated above, the Court should: **(1) DISMISS** Plaintiff's claims against Defendant Finch without prejudice for failure to comply with Fed. R. Civ. P. 4(m) (or, alternatively, with prejudice under 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)) (*see* Section II.C.); and, **(2) GRANT** Defendants

Chapman, Jukuri, Swetz, and Polkinghorn's September 7, 2021 motion to dismiss (ECF No. 34), because Plaintiff concedes that his official capacity claims should be dismissed, no *Bivens* claim exists for First Amendment retaliation, the Court should not extend *Bivens* to Plaintiff's Fifth Amendment equal protection race-based discrimination claim, and, consequently, Plaintiff cannot succeed on his conspiracy claim (*see* Section II.E.).

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  August 17, 2022

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE